IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

Hassan Bah,  )
    Petitioner,  )
      )
v.  )    Civil No. 1:19-cv-641
      )
William P. Barr, *et al.*,  )
    Respondents.  )

## MEMORANDUM OPINION

Petitioner, a citizen of Sierra Leone who is subject to an administratively final but judicially stayed removal order, has been detained in U.S. Immigration and Customs Enforcement ("ICE") custody for over two years without a bond hearing. In his petition, he challenges his detention without a bond hearing as a violation of the Due Process Clause of the Fifth Amendment. Respondents[1] argue that petitioner is subject to mandatory detention under 8 U.S.C. § 1231 and argues that his lengthy detention without bond does not violate Due Process.

Respondents have moved for summary judgment, and this motion has been fully briefed and argued and is now ripe for disposition. For the reasons that follow, the respondents' motion must be denied, and petitioner's habeas petition must be granted in part to require a reasonably prompt bond hearing consistent with Due Process.

I.

Summary judgment is appropriate only where there are no genuine disputes of material

---

[1] Petitioner named as respondents William P. Barr, United States Attorney General, Kevin K. McAleenan, Acting Secretary of DHS, Ronald D. Vitiello, Acting Director of ICE, Kim Zanotti, Director of ICE's Washington Field Office, and Paul Perry, the Superintendent of Caroline Detention Facility (collectively, "respondents").

1

fact. Rule 56, Fed. R. Civ. P. Accordingly, the material facts as to which no genuine dispute exists must first be identified. The following undisputed material facts are derived from respondents' motion for summary judgment.[2]

- Petitioner is a citizen of the Republic of Sierra Leone who entered the United States in October 1999 on a now-expired B-2 visa authorization.
- On December 14, 2015, petitioner was indicted by a grand jury in the Circuit Court for the City of Alexandria on two counts: felony possession of a controlled substance and unlawful possession of marijuana.
- On April 5, 2016, the Circuit Court for the City of Alexandria issued a conviction order finding petitioner guilty of the first count, felony possession of a controlled substance.
- On July 12, 2016, the Circuit Court for the City of Alexandria sentenced petitioner to a twelve month term of incarceration that was suspended for all twelve months.
- On July 17, 2017, ICE detained petitioner and served him with a Form I-862 Notice to Appear, placing him in removal proceedings under 8 U.S.C. § 1227(a)(2)(B)(i) for his conviction "of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana" and under 8 U.S.C. § 1227(a)(1) for overstaying his B-2 visa.
- On August 16, 2017, petitioner appeared *pro se* for a master calendar hearing where he requested and was granted additional time to obtain counsel.
- On September 21, 2017, petitioner appeared *pro se* at a master calendar hearing, but with counsel acting as friend of the court. The Immigration Judge ("IJ") sustained both charges of removability despite petitioner's denial of the controlled substance charge. Friend of the court counsel was granted a continuance to obtain representation for petitioner and explore relief from removal.
- On November 2, 2017, petitioner appeared for a master calendar hearing with counsel. petitioner's counsel requested and was granted a continuance for petitioner.
- On January 11, 2018, the IJ found that petitioner's conviction made him removable under 8 U.S.C. § 1227(a)(2)(B)(i).
- On January 18, 2018, petitioner appeared with counsel for a master calendar hearing. Petitioner's counsel requested and was granted a continuance to explore relief from removal.
- On February 22, 2018, the IJ ordered petitioner's removal.

---

[2] Local Civil Rule 56(B) requires the movant to include in his brief in support of a motion for summary judgment a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue and citing the parts of the record relied on to support the listed undisputed facts. Local Civ. R. 56(B). The nonmovant must respond to each enumerated fact and either admit or contest. If contested, the nonmovant must cite to record evidence in support. *Id.* Respondents complied with this Rule. Petitioner's reply did not object to respondents' undisputed material facts. Therefore, the facts below are drawn from respondents' list of undisputed facts.

2

- On March 7, 2018, petitioner appealed his removal order to the Board of Immigration Appeals ("BIA").
- On April 4, 2018, the BIA issued a briefing schedule making briefs for both parties due on April 25, 2018. On April 10, 2018, petitioner requested and was granted an extension of the briefing deadline to May 16, 2018.
- On July 17, 2018, the BIA affirmed the IJ's decision.
- On August 2, 2018, petitioner filed his petition for review with the Fourth Circuit, contesting his removability based on his conviction.
- On August 29, 2018, petitioner filed a motion to stay his removal pending resolution of his petition for review. The Fourth Circuit granted petitioner's motion on September 14, 2018.
- On September 18, 2018, the BIA issued, *sua sponte,* a decision vacating its order from July 17, 2018 and reaffirming the IJ's ruling with a new order addressing an argument Petitioner raised in a reply brief.
- ICE is routinely able to obtain travel documents from Sierra Leone's government, and there are no structural or diplomatic barriers to removing an alien to Sierra Leone.
- On or about August 8, 2018, ICE submitted a travel document request to Sierra Leone. On August 25, Petitioner attended an interview at Sierra Leone's consulate in support of the travel document request.
- The Fourth Circuit has scheduled oral argument in the appeal for September 2019.

## II.

Analysis properly begins with the parties' dispute over which section of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, governs petitioner's detention while the Fourth Circuit Court of Appeals reviews his administratively final but judicially stayed removal order. Respondents argue that 8 U.S.C. § 1231 applies because petitioner is subject to an administratively final removal order. Petitioner disagrees, arguing that § 1226 applies to his ICE detention because the Fourth Circuit stayed his administratively final removal order pending judicial review of its legality.

Nor is the parties' dispute inconsequential; if petitioner is correct that § 1226 applies, the path to a bond hearing is quite clear. For it is well-established that aliens detained under § 1226 must receive bond hearings if their lengthy detentions violate Due Process. *See, e.g., Diop v. ICE/Homeland Security,* 656 F.3d 221, 232–33 (3d Cir. 2011). By contrast, if respondent is correct that § 1231 applies, the path to a bond hearing is more problematical; in that event, petitioner's

eligibility for a bond hearing would depend on whether he could show that there is no significant likelihood of removal in the foreseeable future. *See Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). This requirement—no significant likelihood of removal in the foreseeable future—poses a formidable obstacle where, as in the case of Sierra Leone, no apparent obstacles impede removal to a country.

A careful review of the applicable INA statutory language makes clear that where, as here, a court stays an administratively final removal order pending judicial review, it is § 1226, not § 1231, that is applicable. As § 1226's plain language makes clear, that section applies where an alien may be detained "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226. Petitioner's case fits this section. He is an alien whose administratively final removal order has been stayed pending judicial review and he is awaiting the Fourth Circuit's decision on whether his removal is legal. In petitioner's case, therefore, there is no final decision on petitioner's removal and there will be none unless and until the Fourth Circuit completes its review and issues its decision. Although the BIA's decision made petitioner's removal order administratively final, the Fourth Circuit's issuance of a stay pending judicial review and the ongoing judicial review deprives that administratively final order, at least temporarily, of effect. In sum, § 1226 by its terms applies to petitioner's situation.

By contrast, § 1231 does not govern petitioner's detention unless and until the Fourth Circuit lifts the stay and issues its final order. Specifically, § 1231 mandates an alien's detention "during the removal period" and specifies circumstances in which an alien "may be detained beyond the removal period." 8 U.S.C. §§ 1231(a)(2), 1231(a)(6). Section 1231 by its terms defines when the removal period commences, stating that the removal period does not begin until the "latest of" three possible dates:

4

(i) The date the order of removal becomes administratively final.

*(ii) If the removal order is judicially reviewed and if a court orders a stay of removal of the alien, the date of the court's final order.*

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B) (emphasis added). Section 1231(a)(1)(B)(ii) precisely addresses petitioner's circumstances. Thus, petitioner's removal period does not begin before the Fourth Circuit's final order, and it follows, therefore, that petitioner is currently detained pursuant to § 1226, not § 1231.

Although there is no published Fourth Circuit precedent in point, pertinent authority from other circuits confirms the applicability in this case of § 1226. Every circuit court of appeals to have addressed that issue has concluded that § 1226 governs an alien's detention while an administratively final removal order is stayed pending review. *See Hechavarria v. Sessions*, 891 F.3d 49, 54–57 (2d Cir. 2018); *Leslie v. Att'y Gen.*, 678 F.3d 265, 270 (3d Cir. 2012), *abrogated in part and on other grounds by Jennings v. Rodriguez*, 138 S. Ct. 830, 847 (2018); *Prieto-Romero v. Clark*, 534 F.3d 1053, 1059 (9th Cir. 2008); *Bejjani v. INS*, 271 F.3d 670, 689 (6th Cir. 2001), *abrogated on other grounds by Fernandez–Vargaz v. Gonzales*, 548 U.S. 30 (2006). District courts have reached the same result. *See Singh v. Sessions*, 2018 WL 2118433, at *2 (N.D. Ala. May 8, 2018) (holding that denial of stay of removal made administratively final order the latest triggering event for the beginning of the removal period); *Tindi v. Secretary, Department of Homeland Security*, 363 F. Supp. 3d 971, 976–77 (D. Minn. 2017) (applying Section 1226 to an alien detainee whose order of removal was stayed); *Reid v. Donelan*, 64 F. Supp. 3d 271, 277 (D. Mass. 2014) (same); *Molina v. Holder*, 2010 WL 445918, at *6 & n. 1 (D. Neb. Jan. 26, 2010) (stating that "the removal period may not begin until the date the court of appeals denies the motion to stay

5

deportation").[3]

Seeking to avoid this result, respondents advance two arguments, neither of which is persuasive. First, respondents contend that applying § 1226 to an alien whose removal order has been stayed operates to nullify administrative finality as a triggering event. 8 U.S.C. § 1231(a)(1)(B)(i). This argument simply ignores the full text of § 1231, which instructs courts to look to the "latest of" the listed events. 8 U.S.C. § 1231(a)(1)(B).

*Michel v. INS*, chiefly relied on by respondents, is not to the contrary. 119 F. Supp. 2d 485, 498 (M.D. Pa. 2000). Indeed, carefully read, *Michel* supports the result here. Respondents argue that the removal period's beginning is determined by looking to "what events have already occurred." *Id.* According to respondent, the removal order's administrative finality began petitioner's § 1231 detention because that was the latest triggering event at that time. Respondents' description of *Michel* includes a quote that elides critical language and, importantly, omits the result reached in that case. Although the *Michel* case included the quote that "the removal period begins when the removal order becomes final," it further elaborated that "[i]f a court issues a stay, the removal period begins when the stay is lifted." *Id.* In short, *Michel* supports the conclusion here that a reviewing court's stay order displaces administrative finality as the event marking the commencement of the removal period.

Next, respondents argue that deference must be accorded to agency regulations[4] and

---

[3] The Supreme Court's decision in *Jennings v. Rodriguez*, which held that courts must not use the canon of constitutional avoidance to adopt "implausible constructions" of the INA's text, does not affect § 1226's application to an alien subject to an administratively final but judicially stayed removal order pending judicial review of its legality. *See* 138 S. Ct. 830, 836 (2018).

[4] *See, e.g.,* 8 C.F.R. §§ 241.1, 1241.1(a) (stating that an order of removal becomes final and triggers the beginning of the removal period "[u]pon dismissal of an appeal by the Board of Immigration Appeals").

practice[5] identifying administrative finality as the point of transition from § 1226 to § 1231. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). This argument is equally unpersuasive. This case presents no circumstances for the operation of *Chevron*. Although there are circumstances in which agency regulations and interpretations may be helpful in construing or applying statutes, those circumstances are not present here. Importantly, agency regulations and practice cannot alter the plain meaning of the statute's text. Moreover, it is well-established that *Chevron* deference to an agency interpretation is only appropriate where, as is not true here, "the 'devices of judicial construction have been tried and found to yield no clear sense of congressional intent.'" *Chamber of Commerce of U.S. v. NLRB*, 721 F.3d 152, 160 (4th Cir. 2013) (quoting *Gen. Dynamics Land Sys., Inc v. Cline*, 540 U.S. 581, 600 (2004)). In other words, agency deference in this case is not appropriate because the INA's text yields a clear answer that § 1231 does not apply and the removal period does not begin until a reviewing court issues a final order. 8 U.S.C. § 1231(a)(1)(B)(ii).[6]

In sum, the INA's text makes clear that petitioner's detention here is governed by § 1226, not § 1231, because the Fourth Circuit has yet to make a final decision regarding petitioner's challenge to the administratively final removal order. At this time, therefore, § 1226 governs.

### III.

Given that § 1226 governs the petitioner's detention, the next question is whether petitioner, who has now been detained by ICE for more than two years, is constitutionally entitled

---

[5] *See Matter of Joseph*, 22 I. & N. Dec. 660, 668 (BIA 1999) (stating that 8 U.S.C. § 1231 "controls the detention and release of aliens after an administratively final order").

[6] The Second and Ninth Circuits have rejected similar arguments. *See Hechavarria*, 891 F.3d at 55–56 (declining to defer pursuant to *Chevron* because "[t]here is simply nothing ambiguous about the statute at issue."); *Prieto-Romero*, 534 F.3d at 1061 ("We also reject the suggestion that we should accord *Chevron* deference to the BIA's construction of § 1231.").

to a bond hearing. He is.[7] The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend V. As the Supreme Court has noted, all "persons," including aliens in immigration proceedings, are entitled to Due Process. *See Zadvydas*, 533 U.S. at 693.

The constitutional concerns posed by an alien's prolonged detention are well-established in the Supreme Court's jurisprudence. In *Zadvydas v. Davis*, two aliens subject to final removal orders were detained beyond the removal period because no countries were willing to accept them. 533 U.S. at 686–86. The Supreme Court held that § 1231(a)(6)'s authorization to detain an alien "beyond" the removal period was implicitly limited to "the period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689. The Supreme Court established that detention for up to six months was "presumptively reasonable." *Id.* at 701.

*Demore v. Kim*, a § 1226(c) challenge, distinguished *Zadvydas*, but nevertheless recognized that the prolonged detention of aliens absent justification could violate Due Process. 538 U.S. 510, 528–30 (2003). In *Demore*, the Supreme Court held that a lawful permanent resident's detention under § 1226(c) did not violate Due Process. 538 U.S. at 524. *Demore* distinguished *Zadvydas* on two grounds, one of which was the "much shorter duration" of detention under § 1226(c). *Id.* at 528–30. Unlike the "indefinite" detention contemplated in *Zadvydas*, detention under § 1226(c) typically lasted between "a month and a half . . . and about five months." *Id.* (quoting *Zadvydas*, 533 U.S. at 690–91) (quotation marks omitted). Justice Kennedy joined the *Demore* majority opinion on the understanding that an alien "could be entitled

---

[7] Petitioner argued in his petition that his detention violates the INA. That argument is unpersuasive. Petitioner is mandatorily detained under § 1226(c) because he is deportable by reason of § § 1227(a)(2)(B)(i), and, as the Supreme Court's decision in *Jennings* makes clear, § 1226(c) "does not on its face limit the length of the detention it authorizes." 138 S. Ct. 830, 846 (2018).

8

to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Demore*, 538 U.S. at 532–33 (Kennedy, J., concurring).

Following the Supreme Court's *Demore* decision, multiple circuit courts have ordered bond hearings for aliens detained pursuant to § 1226(c). The Third Circuit has consistently held that prolonged detention under § 1226(c) without a bond hearing violates Due Process. *See Diop v. ICE/Homeland Security*, 656 F.3d 221, 232–33 (3d Cir. 2011) (ordering a bond hearing after detention for thirty-five months); *see also Borbot v. Warden Hudson Cty. Corr. Facility*, 906 F.3d 274, 278 (3d Cir. 2018) ("*Jennings* did not call into question our constitutional holding in *Diop* that detention under § 1226(c) may violate Due Process if unreasonably long.").[8]

Whether an alien's detention without a bond hearing violates Due Process requires a balancing of petitioner's liberty interest against respondents' interest in protecting the public and ensuring petitioner's presence at removal proceedings. *See Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 473–75 (3d Cir. 2015) (holding that petitioner detained under § 1226(c) for one year must receive bond hearing), *abrogated in part and on other grounds by Jennings*, 138 S. Ct. at 847.[9] Careful consideration of this petitioner's circumstances makes clear that his detention

---

[8] Before *Jennings*, many courts applied the canon of constitutional avoidance to the INA's text to justify a bond hearing. *See Sopo v. U.S. Attorney Gen.*, 825 F.3d 1199, 1202 (11th Cir. 2016) (ordering a bond hearing after detention for forty-eight months), *vacated*, 890 F.3d 952 (11th Cir. 2018); *Reid v. Donelan*, 819 F.3d 486, 501 (1st Cir 2016) (ordering a bond hearing after detention for fourteen months), *withdrawn upon reconsideration, Reid v. Donelan*, 2018 WL 4000993 (1st Cir 2018); *Lora v. Shanahan*, 804 F.3d 601, 616 (2d Cir. 2015) (same), *cert. granted, judgment vacated*, 138 S. Ct. 1260 (2018); *Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013) (requiring bond hearings for mandatory detention longer than six months), *abrogated by Jennings*, 138 S. Ct. 830 (2018); *Ly v. Hansen*, 351 F.3d 263, 270 (6th Cir. 2003) (ordering a bond hearing after detention for eighteen months), *abrogated by Jennings*, 138 S. Ct. 830 (2018).

[9] Other district courts in this district have applied a five-factor balancing test to determine whether prolonged detention without a bond hearing violates Due Process. The five factors are: (1) the duration of detention, including the anticipated time to completion of the alien's removal proceedings; (2) whether the civil detention exceeds the criminal detention for the underlying offense; (3) dilatory tactics employed in bad faith by the parties or adjudicators; (4) procedural or substantive legal errors that significantly extend the duration of detention; and (5) the

without a bond hearing violates Due Process. To begin with, the duration of petitioner's detention far exceeds *Demore*'s one-and-a-half to five-month period and *Zadvydas*'s presumptively reasonable six-month period. *See* 538 U.S. at 528–30; 533 U.S. at 701. Nor is there any doubt that petitioner's detention for over two years without a bond hearing raises significant Due Process concerns.[10]

Respondents disagree, arguing that petitioner's continuances and appeals have extended his detention. To accept respondents' argument in this regard impermissibly penalizes an alien's exercise of his legal rights. And, importantly, there is no evidence that this petitioner has acted in bad faith. As the Sixth Circuit recognized, "appeals and petitions for relief are to be expected as a natural part of the process." *Ly*, 351 F.3d at 272. Here, petitioner's decision "to explore avenues of relief that the law makes available to him" does not mitigate the Due Process concerns created by his lengthy detention. *Id.*

In sum, it is clear that petitioner's detention for more than two years without a bond hearing violates Due Process. Petitioner must receive a prompt bond hearing before an IJ.

## IV.

A final question remains concerning the proper procedure governing petitioner's bond

---

likelihood that the government will secure a final removal order. *Portillo v. Hott*, 322 F. Supp. 3d 698, 707 (E.D. Va. 2018) (ordering a bond hearing for alien detained for 14 months during pendency of application for withholding of removal); *Mauricio-Vasquez v. Crawford*, 2017 WL 1476349, at *4–5 (E.D. Va. April 24, 2017) (applying factors to evaluate implicit reasonableness of detention without bond hearing under § 1226(c) and ordering a bond hearing for alien detained for 15 months); *Haughton v. Crawford*, 2016 WL 5899285, at *8–10 (E.D. Va. Oct. 7, 2016) (ordering a bond hearing for an alien detained for 12 months after conducting the same analysis). These courts give duration of the detention significant weight due to *Zadvydas* and *Demore*'s concerns about prolonged detention. *See Portillo*, 322 F. Supp. 3d at 707; *Mauricio-Vasquez*, 2017 WL 1476349, at *4.

[10] In cases that provide persuasive rather than binding authority, courts have ordered bond hearings for aliens detained without bond hearings for shorter periods of time. *See Reid*, 819 F.3d at 501 (ordering a bond hearing after detention for fourteen months); *Ly*, 351 F.3d at 270 (ordering a bond hearing after detention for eighteen months); *Portillo*, 322 F. Supp. 3d at 707 (ordering a bond hearing after detention for fourteen months); *Mauricio-Vasquez*, 2017 WL 1476349, at *4–5 (ordering a bond hearing after detention for fifteen months); *Haughton*, 2016 WL 5899285, at *8–10 (ordering a bond hearing after detention for twelve months).

hearing before an IJ. The parties dispute which side should bear the burden of proof and how the standard of proof should be articulated. Petitioner requests that the government be required to prove by clear and convincing evidence that petitioner is a danger to the community or a flight risk. Respondents argue that a bond hearing should proceed in accordance with 8 C.F.R. § 1236.1(c)(8), which requires the alien seeking release on bond to "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." The statutory framework does not establish with clarity the proper allocation and formulation of the burden of proof for an alien's bond hearing under § 1226, and courts have come to different conclusions on these questions.[11]

As a practical matter, an alien who receives a bond hearing bears an initial burden of production to come forward with evidence that favors release. The petitioner is best situated to produce evidence on issues such as his ties to the United States, family connections, and employment history. As a matter of Due Process, the government bears the ultimate burden of persuasion. In criminal pre-trial bond hearings, Due Process requires the government to prove "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e); *United States v. Salerno*, 481 U.S. 739 (1987) (upholding the Bail Reform Act as constitutional). Due Process does not require a different allocation of the burden of persuasion here.

The government must prove "to the satisfaction of the [IJ] that" no condition or

---

[11] *Contrast Borbot*, 906 F.3d at 279 (observing that the government bears the burden of proof for aliens detained under § 1226(c)); *Lora*, 804 F.3d at 616 (requiring the government to bear burden of proof by clear and convincing evidence at bond hearing for alien detained under § 1226(c)); *Rodriguez*, 715 F.3d at 1144 (same); *Haughton v. Crawford*, 221 F. Supp. 3d 712, 714 (E.D. Va. 2016) (same); *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 720–23 (D.Md. 2016) (same), *with Sopo*, 825 F.3d at 1219 (requiring the alien to bear the burden of proof to the satisfaction of the IJ at a bond hearing under § 1226(c)); *Reid*, 819 F.3d at 492 (summarily affirming district court ruling that bond hearing under § 1226(c) would proceed under regulations for § 1226(a)); *Mauricio-Vasquez*, 2017 WL 1476349, at *4–5 (deferring to existing bond regulations).

combination of conditions, including electronic monitoring, will reasonably assure the appearance of the person as required and the safety of any other person and the community. 8 C.F.R. § 1236.1(c)(8). Although a criminal pre-trial bond hearing requires proof by clear and convincing evidence, 18 U.S.C. § 3142(f)(2), proof to the satisfaction of the immigration judge may be equivalent to clear and convincing evidence in many cases. Accordingly, petitioner must receive a bond hearing in accordance with these procedures.

V.

Petitioner's prolonged detention under 8 U.S.C. § 1226(c) violates Due Process. This conclusion is consistent with the Supreme Court's decisions in *Demore* and *Zadvydas* as well as the lower court opinions interpreting those decisions. To satisfy the requirements of Due Process, petitioner must receive a reasonably prompt bond hearing at which the Government bears the burden of showing to the satisfaction of the IJ that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. As such, respondents' motion for summary judgment must be denied, and the petition must be granted in part.

An appropriate Order shall issue.

/s/ [signature] 9/6/19
T. S. Ellis, III
United States District Judge